IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:13-cv-20

| | | |
|---|---|---|
| BRIAN C. LEE, SR. | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | **(VERIFIED)** |
| vs. | ) | |
| | ) | |
| THE TOWN OF SEABOARD, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

NOW COMES the Plaintiff Brian C. Lee, Sr., ("Lee," "Mr. Lee," or "Plaintiff") by and through counsel, complaining of the Defendant, and alleges and states that:

### NATURE OF THE CASE

1. In this action Mr. Lee seeks compensatory damages and other relief arising under North Carolina's Constitution and laws to redress negligent and unconstitutional conduct on the part of Defendant and its employee. The conduct of Defendant and its employee as alleged herein, constituted, *inter alia*, unlawful and unreasonable seizure with excessive and unwarranted deadly force in violation of Mr. Lee's rights under North Carolina's Constitution and laws. Mr. Lee should be awarded compensatory damages along with other relief for these violations of his state protected constitutional rights and of state law.

### JURISDICTION AND VENUE

2. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the Plaintiff is a citizen and resident of Virginia and, upon information and belief, the Defendant is incorporated in and is located in North Carolina, and Plaintiff's damages exceed $75,000.00.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant resides

1

in this District, and the claims asserted herein arose in this District.

## PARTIES

4. The Plaintiff, Brian C. Lee, Sr., is, and at all relevant times, was a resident of Virginia.

5. Upon information and belief, Defendant Town of Seaboard (hereinafter "Seaboard") is a municipal corporation properly chartered, organized, and existing under the laws and Constitution of North Carolina, and was the employer of Harold Gray Phillips, Jr. ("Phillips"), who was appointed as a law enforcement officer of Seaboard's Police Department (hereinafter "SPD") pursuant to N.C. Gen. Stat. § 160A-28. Seaboard is being sued for its own conduct and for the conduct of Phillips in his official capacity and/or for Phillips' conduct while acting within the course and scope of his employment and law enforcement duties for Seaboard as its employee or agent at all relevant times.

6. Northampton County, North Carolina is where

   a) a substantial part of the events giving rise to the Plaintiff's claims occurred;
   b) the causes of action in this case arose; and
   c) Seaboard is located.

## WAIVERS OF IMMUNITY

7. Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

8. Upon information and belief, Seaboard and any and all of its agents, employees, and officers waived any sovereign or governmental immunity that could have been raised as to Plaintiff's claims in that Seaboard had in force at all relevant times,

   a) pursuant to N.C. Gen. Stat. § 160A-485,

      i) plans of insurance entered into, and/or

ii) City Council resolutions that waived immunity and established a funded reserve; and/or

b) pursuant to N.C. Gen. Stat. § 58-23, participated in local government risk pool or pools.

9. In the alternative, if it is determined that Seaboard has not waived sovereign or governmental immunity, or that any such waiver does not provide Plaintiff an adequate remedy at state law, then Plaintiff asserts a direct cause of action for violations of Plaintiff's rights under the North Carolina Constitution.

## **FACTUAL ALLEGATIONS**

10. Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

11. On or about the evening of May 14, 2010, Plaintiff, his brother Michael Lee, and his cousin James Orr drove from Virginia to attend an event at the Elks Lodge located on Jordan Street in Seaboard. Plaintiff was asked to attend by another cousin, Ernest Flythe.

12. Upon information and belief, David Twine ("Twine"), an SPD officer, was on site during the event.

13. Upon information and belief, Phillips entered the Elks Club several times during the evening while he was on duty. Phillips wore black pants and a black polo shirt which were not marked with any highly visible police insignias. However, Phillips' marked police car was parked in the Elks Club parking lot area.

14. Upon information and belief, the event itself was fairly uneventful, but many of the local Seaboard male guests were not happy with the out of town guests because they were somewhat popular that evening.

15. On or about 2:00 a.m. on May 15, 2010, the music was shut down and the guests exited

the Elks Club. Phillips exited the club as well.

16. Lee, Michael Lee, and James Orr walked towards Lee's car. Upon information and belief, one of the local Seaboard male guests threw a drink on Lee. Lee removed a towel from the trunk of his car and wiped the drink off.

17. A crowd of eight to twelve men menaced, pushed and closed in on Lee.

18. Upon information and belief, the crowd of men rushed at Lee and at least one of the men punched Lee in the face and/or head.

19. Lee got into the car and started it. Michael Lee got into the back seat and James Orr got into the front passenger seat.

20. The crowd of men continued their attempts to attack Lee. Upon information and belief, neither Phillips nor Twine tried to stop the men from attacking Lee.

21. Upon information and belief, Michael Lee and James Orr opened their doors to come to Lee's aid. Phillips, who stood at the front passenger side of Lee's car, drew his gun, held it by his side, and ordered the men back into the car. The men complied.

22. Phillips ordered Lee to leave.

23. Lee closed his car door to leave as Phillips had ordered, but some of the crowd tried to open his door to pull him out. As Lee tried to drive off, his cousin Orr was in the front passenger seat and his brother Michael was in the rear seat.

24. Approximately seven to ten men attacked Lee's car. Some of the men jumped on the hood of Lee's car and stomped on it, and pushed the hood into the engine compartment. Some of the men kicked and shattered the portion of the front windshield directly in front of Lee as they tried to get at him.

25. Lee's car faced away from the road and he had to turn the car around before he could

4

drive out. Lee drove forward to turn around, and the men on the hood of the car jumped off. As Lee drove and turned, the men kicked at the side of his car. Some of the men opened the driver's door and tried to pull Lee out of the car as it slowly moved. Michael Lee reached from the back seat and pushed some of the men off of Lee and Lee closed the driver's door.

26. Lee was not familiar with Seaboard and he turned left towards the dead-end of Jordan Street. He then circled around the dead end to drive away.

27. The mob pursued Lee's car as he circled to turn around. Lee continued to drive up Jordan Street to leave the area as Phillips had commanded and because he and his passengers were in fear for their lives from the attacking mob.

28. Upon information and belief, while Lee drove around the dead end of Jordan Street, Phillips walked across Jordan Street from the Elks Club parking lot to the far side of the street with his gun drawn.

29. Lee had not broken any law and there was no probable cause to believe that he had. Lee followed Phillips command to leave the area in his car, and he tried to flee the attacking mob.

30. There was no probable cause to believe that either Michael Lee or Orr had committed a crime.

31. Phillips did not go to his patrol car and attempt to stop Lee.

32. Upon information and belief, Phillips had no basis to reasonably believe that he had to fire his gun into Lee's occupied vehicle to defend himself or others from the use or imminent use of deadly physical force.

33. Upon information and belief, Phillips had no basis to reasonably believe that Lee, Michael Lee, or Orr were attempting to escape custody or that any of them presented an imminent threat of death or serious physical injury to others unless apprehended without delay.

34.     Phillips fired two shots directly into the side of Lee's car as it passed by him.

35.     Upon information and belief, Phillips was five to ten feet away and to the side of Lee's car when he fired into it.

36.     Both shots were fired directly at Lee.

37.     One bullet penetrated the outside metal of the driver's door and embedded in the interior door panel.  Upon information and belief, this shot was aimed to strike Lee's torso.

38.     The other bullet shattered the driver's side window and struck Lee's right forearm.  The bullet completely penetrated and exited Lee's forearm and shattered his ulna.

39.     Upon information and belief, as Lee drove further down Jordan Street, Phillips fired a third shot that penetrated the rear window of Lee's car and caused it to shatter and spray glass inside the car.

40.     A short time later a police car stopped Lee's car.  Lee immediately stopped once he saw the emergency lights behind his car.

41.     There were no firearms in Lee's car or on the persons of Lee, Michael Lee, or Orr.

42.     Lee bled extensively from his wound.  Lee was taken to Halifax Regional Hospital for emergency treatment.  Lee was transferred to Pitt County Memorial Hospital.  Lee was diagnosed with a gunshot wound and shattered ulna.

43.     Lee suffers from permanent scarring and permanent disability as a direct and proximate result of his being shot by Phillips.

44.     Lee suffered and suffers from emotional distress as a direct and proximate result of his being shot by Phillips and his resultant disability.

45.     Lee was never charged with any crime related to this incident.

46.     Michael Lee was never charged with any crime related to this incident.

47. James Orr was never charged with any crime related to this incident.

48. Phillips acted negligently but within the course and scope of his employment and law enforcement duties for Seaboard as its employee or agent at all relevant times; Phillips' conduct was expressly authorized by Seaboard; and/or Phillips' conduct was ratified by Seaboard; and Seaboard is liable for Phillips' wrongful acts under the doctrine of Respondeat Superior.

49. The conduct of Phillips and Twine demonstrated a clear lack of training and supervision, in that:

   a) Phillips and Twine did not attempt to protect Lee when he was attacked by the angry mob;

   b) Phillips drew his gun in situations that did not call for the use or threat of deadly force, such as when Michael Lee and Orr attempted to exit the car to assist Lee as he was beaten by the mob, and when Phillips fired into Lee's occupied car.

50. Upon information and belief, by policy and/or practice, Seaboard did not adequately train, supervise or discipline Phillips to ensure that he would not violate his duty to not use unreasonable, excessive, and/or unjustified deadly force.

51. Upon information and belief, no reasonable law enforcement officer who had the same information that Phillips did at the time would believe that the use of deadly force was reasonable.

52. Upon information and belief, Phillips filed a voluntary petition on June 1, 2011 and was granted a discharge under Section 727 of Title 11 of the United States Code (Bankruptcy Code) on September 8, 2011, in the United States Bankruptcy Court of the Eastern District of North Carolina, Case No. 11−04261−8−RDD. Phillips did not identify, list, schedule or notice Plaintiff as a creditor or identify, list, or schedule any debts listed in Section 522(c) and Plaintiff did not

7

Case 2:13-cv-00020-D   Document 1   Filed 03/30/13   Page 7 of 12

have actual knowledge of Phillips' bankruptcy case until close to the time of the filing of Plaintiff's instant Complaint.

## CLAIMS FOR RELIEF

### COUNT ONE: NEGLIGENT USE OF EXCESSIVE FORCE
### (AGAINST SEABOARD)

53. Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

54. Phillips had a duty compelled by N.C. Gen. Stat. 15A-401, the North Carolina Constitution, and by the Fourth Amendment of the U.S. Constitution to only use reasonable force when making or attempting to make lawful arrests or seizures.

55. Phillips had a duty compelled by N.C. Gen. Stat. 15A-401, the North Carolina Constitution, and by the Fourth Amendment of the U.S. Constitution to not use any force in making or attempting to make an arrest or seizure if he had no lawful basis for such an arrest or seizure.

56. N.C. Gen. Stat. 15A-401 is a safety statute designed to protect people such as Lee.

57. Phillips negligently breached his duty by using excessive force above the constitutionally and statutorily limited reasonable force in his attempted seizure of Lee.

58. Phillips negligently breached his duty by using any force in his attempted seizure of Lee because he had no lawful basis to attempt the seizure.

59. Lee was injured by the force and the excessive force above the constitutionally and statutorily limited reasonable force used by Phillips in his attempted seizure.

60. The breach of duty by Phillips proximately caused Lee's injuries.

61. Seaboard is liable for Phillips' conduct under the doctrine of Respondeat Superior.

8

Case 2:13-cv-00020-D   Document 1   Filed 03/30/13   Page 8 of 12

## COUNT TWO: ASSAULT AND BATTERY/NEGLIGENT ASSAULT AND BATTERY
### (AGAINST SEABOARD)

62. Plaintiff incorporates by reference and re-allege the allegations in preceding paragraphs as though fully set forth herein.

63. Phillips, by his conduct alleged herein, did intentionally put Plaintiff in reasonable apprehension of imminent threat of physical injury and immediate harmful and offensive contact, and Phillips had the present ability to cause the threatened contacts with Plaintiff.

64. Phillips did intentionally cause bodily contacts with Plaintiff.

65. Said bodily contacts did actually offend said Plaintiff's reasonable sense of personal dignity.

66. The said bodily contacts did actually cause physical pain and injury to Plaintiff.

67. The said bodily contacts occurred without the consent of Plaintiff.

68. Phillips was negligent in believing that his conduct was lawful, privileged or justified.

69. Phillips' conduct proximately caused injuries to Plaintiff.

70. Seaboard is liable for Phillips' conduct under the doctrine of Respondeat Superior.

## COUNT THREE: NEGLIGENT SUPERVISION
### (AGAINST SEABOARD)

71. Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

72. Seaboard had a duty to supervise, monitor and train its employees, including Phillips, particularly in the use of deadly force.

73. Seaboard failed to properly supervise, monitor and train Phillips, particularly in the use of deadly force, as shown by his conduct as alleged herein.

74. Seaboard knew was that Phillips was likely to breach his duty to persons like Lee to only

use reasonable force or no force without a lawful reason.

75. Seaboard had a duty to implement procedures, practices and safeguards to protect persons like Lee from harm foreseeably caused by its employees, such as Phillips.

76. Seaboard failed to implement procedures, practices and safeguards to protect such harm to persons such as Lee.

77. As a direct and proximate result of said negligence, Seaboard did in fact cause injury to Lee.

### COUNT FOUR: DIRECT CLAIMS UNDER NORTH CAROLINA'S CONSTITUTION
### (AGAINST SEABOARD)

78. Plaintiff incorporates by reference and re-alleges the allegations in the preceding paragraphs as though fully set forth herein.

79. In the alternative, Lee asserts direct claims under North Carolina's Constitution against the City for damages proximately caused by its violations of Lee's rights if it is found that the City has not waived its sovereign or governmental immunity for Lee's claims herein, or that any such waiver does not provide an adequate remedy at state law.

80. Lee has no adequate remedy at state law because any claims against Phillips in his individual capacity are barred by injunction pursuant to 11 U.S.C. § 524.

81. At all times alleged herein, Phillips acted under color of state law.

82. Acting within the course and scope of his employment, the wrongful acts and omissions of Phillips alleged herein were in violation of the protections guaranteed by the North Carolina Constitution, including but not limited to, Article I, Sections 1, 19-21, and 35-36. By way of example and not limitation, Lee was unconstitutionally subjected to unreasonable, excessive, and deadly force.

83. Said violations of Lee's rights proximately caused Lee injuries as alleged herein.

## DAMAGES

84. Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

85. As a direct, consequent, and proximate result of the aforesaid acts and omissions of the Defendant, Plaintiff has been injured in his body and mind, has been prevented from transacting his normal business, and has otherwise been afflicted with great pain and suffering, permanent partial loss of function, disability, and permanent scarring, and has incurred pecuniary losses, including but not limited to past and future medical treatment and related expenses, has been forced to undergo surgical procedures, loss of wages and benefits and loss of future wages and benefits, and out of pocket expenses.

86. Wherefore, the Plaintiff is entitled to recover from the Defendant compensatory damages for said pecuniary losses, and inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses in excess of the federal diversity jurisdictional amount in an amount to be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully prays this Court for relief as follows:

1. That the Plaintiff have and recover of Seaboard the maximum compensatory damages allowed by North Carolina law, including pre-judgment and post-judgment interest;

2. That the Plaintiff be granted a trial by jury on all issues so triable, except for any issues of law or fact relating to insurance as contemplated and required by N.C. Gen. Stat. § 160A-485(d);

3. That in any event, for all claims alleged against Seaboard herein, but excluding direct claims under North Carolina's Constitution, the Plaintiff seeks only the maximum amount of

damages, interest, and costs provided by or allowed by law that are within the scope of the waiver and/or waivers of immunity as alleged herein, however this limitation does not apply to Plaintiff's direct claims under North Carolina's Constitution; and

4. That the Plaintiff be granted such other and further relief as this court may deem just and proper.

This the 30th day of March, 2013.

                               **DOGGETT LAW OFFICES**

                               **/s/Eric L. Doggett**
                               **ERIC L. DOGGETT**
                               Attorney for Plaintiff
                               N.C. State Bar # 39639
                               3737 Glenwood Ave Ste 100
                               Raleigh, North Carolina 27612-5515
                               Telephone:    (919) 782-2979
                               Facsimile:     (919) 789-2796
                               Email: Eric@DoggettLawOffices.com