**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1447

BRIAN C. LEE, SR.,

        Plaintiff – Appellant,

    v.

TOWN OF SEABOARD,

        Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Dever III, Chief District Judge. (2:13−cv−00020−D)

Argued: March 23, 2017                      Decided: July 14, 2017

Before NIEMEYER, KING, and WYNN, Circuit Judges.

Reversed and remanded by published opinion. Judge Wynn wrote the opinion, in which Judge Niemeyer and Judge King joined.

**ARGUED:** Eric Laurence Doggett, DOGGETT LAW OFFICES, Raleigh, North Carolina, for Appellant. Dan M. Hartzog, Jr., CRANFILL, SUMNER & HARTZOG, LLP, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Dan M. Hartzog, CRANFILL, SUMNER & HARTZOG, LLP, Raleigh, North Carolina, for Appellee.

WYNN, Circuit Judge:

Early on the morning of May 15, 2010, Sergeant Howard Phillips ("Sergeant Phillips"), a police officer employed by Defendant Town of Seaboard, North Carolina ("Seaboard"), shot and wounded Plaintiff Brian C. Lee, Sr. ("Lee") as Lee was driving to escape a mob that had attacked him as he left a party at an Elks Lodge in Seaboard. Lee filed a diversity suit in federal district court against Seaboard, asserting a variety of state-law tort claims relating to the shooting. Seaboard moved for summary judgment, arguing that Sergeant Phillips's use of deadly force was justified under N.C. Gen. Stat. § 15A–401(d)(2), thus precluding Lee's state-law tort claims. The district court granted the motion, holding that the undisputed evidence established that Sergeant Phillips reasonably believed deadly force was necessary because Lee posed an imminent threat to Sergeant Phillips and others. But upon viewing the facts in the light most favorable to Lee, as we must, *see Bauer v. Lynch*, 812 F.3d 340, 347 (4th Cir. 2016), the record reveals several genuine disputes of material fact bearing on the reasonableness of Sergeant Phillips's decision to use deadly force against Lee. Accordingly, we conclude that the district court reversibly erred in awarding summary judgment in favor of Seaboard.

I.

A.

On the evening of May 14, 2010, Lee, his brother, and his cousin drove from Norfolk, Virginia, to attend a party at an Elks Lodge in Seaboard, a town of 500 people. Lee was invited to the party by another cousin who was serving as deejay at the party.

Between 9:30 PM and 10:00 PM, Lee and his companions arrived at the Elks Lodge to attend the party, which included between fifty and seventy-five partygoers. Off-duty Seaboard Police Officer David Twine ("Officer Twine") provided security for the party, and on-duty Seaboard Police Sergeant Phillips monitored the party by repeatedly visiting the Elks Lodge throughout the night and patrolling the area around the lodge.

At 2:15 A.M., with between twenty and thirty partygoers remaining, Sergeant Phillips and Officer Twine announced that the party was over. Because there was, as stated by Lee, "tension in the air with the Seaboard crowd," J.A. 349, Sergeant Phillips and Officer Twine escorted Lee and his companions to their car through a crowd of fifteen to twenty local men who "rush[ed] up on" the three men, J.A. 351, began "saying stuff" to them, J.A. 350, and threw a drink at Lee's face.

When the three men reached Lee's car, Sergeant Phillips told them to leave. After Lee retrieved a towel from his car's trunk to dry himself, a member of the crowd punched Lee in the face as Lee tried to get in the vehicle. The evidence viewed in the light most favorable to Lee shows that although at least one of the officers saw Lee punched, neither officer did anything to stop the assailant or the crowd from pursuing Lee.

After the three got in the car, the crowd began kicking and jumping on the car, "smash[ing] in" the car's windshield, and trying to open the car's door. J.A. 353. Again, the evidence viewed in the light most favorable to Lee shows that neither Sergeant Phillips nor Officer Twine did anything to stop the crowd. Instead, Sergeant Phillips again ordered Lee to leave.

3

The evidence viewed in the light most favorable to Lee shows that the three men feared for their lives and tried to "[g]et the hell out of [t]here," driving out of the parking lot with five or six of the assailants on top of the car. J.A. 364. With his visibility impaired because the car's "windshield was smashed in[] and the crowd was still hanging on the car," Lee was able to drive out of the parking lot with the mob running behind him. J.A. 359. Being unfamiliar with his whereabouts, Lee drove down what turned out to be a dead-end street. Lee then turned the vehicle around and began driving in the opposite direction—toward the Elks Lodge—seeking to get out of the area.

Meanwhile, and unbeknownst to Lee, Sergeant Phillips had pursued Lee's vehicle on foot, intending to stop the car and place Lee under arrest because he believed Lee had hit a partygoer as he drove out of the parking lot. The evidence viewed in the light most favorable to Lee, however, demonstrates that Lee did not hit anyone as he left the parking lot. As Lee drove from the dead-end back towards the Elks Lodge, Sergeant Phillips drew his weapon and allegedly shouted at Lee to "stop the car." J.A. 159. The evidence viewed in the light most favorable to Lee establishes that neither Lee nor the other occupants of the car heard Sergeant Phillips's command, and Lee did not stop.

In response, Sergeant Phillips backed up the street, moved to the side of the road opposite the Elks Lodge, and took a "shooter's stance." J.A. 212. As Lee accelerated to get away from the mob chasing his car, reaching speeds of fifteen to twenty miles per hour, Sergeant Phillips, while facing the side of Lee's car, fired two shots into the side of Lee's vehicle. One of the bullets penetrated the driver's side window and struck Lee in his left arm, fracturing his ulna, while the other bullet pierced the driver's side door. Not

4

realizing he had been shot, Lee continued driving for between three and five minutes before two other law enforcement officers pulled him over some distance from the scene of the shooting. Lee was later hospitalized in Greenville, North Carolina.

No charges were brought against Lee or anyone else stemming from these incidents outside the Elks Lodge. And, after interviewing Lee about the shooting, the State Bureau of Investigation declined to charge Sergeant Phillips criminally, and Seaboard did not investigate the incident or initiate administrative proceedings. Sergeant Phillips resigned later that year.

B.

On March 30, 2013, Lee filed a diversity action against Seaboard in the United States District Court for the Eastern District of North Carolina. Lee's complaint alleged various state-law tort claims, including negligent use of excessive force, intentional and negligent assault and battery, and negligent supervision.[1] On July 17, 2013, Lee filed an amended complaint in the district court. Seaboard filed an answer to the amended

---

[1] Lee also asserted a direct cause of action under the North Carolina Constitution, which the district court dismissed. Because Lee's state-law tort claims offer an "adequate state remedy," Lee is not entitled to seek separate relief under the state constitution. *See Corum v. Univ. of N.C.*, 413 S.E.2d 276, 289 (N.C. 1992) (holding that, "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution"); *Wilcox v. City of Asheville*, 730 S.E.2d 226, 236 (N.C. Ct. App. 2012) (holding, in an excessive force case, that North Carolina tort claims constituted an "adequate state remedy" and therefore "preclude[d] plaintiff's] state constitutional claims"). Accordingly, contrary to Lee's arguments on appeal, the district court did not err in dismissing Lee's state constitutional claim.

5

complaint on August 5, 2013, asserting governmental immunity as an affirmative defense.

On June 26, 2015, following discovery, Seaboard moved for summary judgment, arguing that, based on the undisputed facts, Sergeant Phillips's use of force was justified under state law. That same day, Lee filed a cross-motion for partial summary judgment as to Seaboard's waiver of governmental immunity and attached to his motion a certified copy of Seaboard's insurance policy in place at the time Sergeant Phillips shot Lee. In response to Lee's motion, Seaboard withdrew its governmental immunity defense and instead asserted public official immunity as an alternative defense.

On March 25, 2016, the district court granted Seaboard's summary judgment motion and denied, without explanation, Lee's cross-motion for partial summary judgment.[2] *Lee v. Town of Seaboard*, No. 2:13–CV–20–D, 2016 WL 1249148, at *6 (E.D.N.C. Mar. 25, 2016). In granting summary judgment to Seaboard, the district court found that Lee's state-law tort claims were foreclosed because Sergeant Phillips's conduct was justified under N.C. Gen. Stat. § 15A–401(d)(2). *Lee*, 2016 WL 1249148, at *4–6. And because the district court found that Sergeant Phillips's conduct was privileged under state law, it did not address Seaboard's other arguments. *Id.* at *6. Accordingly, the district court entered judgment in favor of Seaboard, and Lee timely appealed.

---

[2] As noted above, Seaboard has expressly withdrawn its defense of governmental immunity. Accordingly, Lee's claims are not barred by governmental immunity.

II.

We review a district court's grant of summary judgment de novo. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988). "The narrow questions before us on summary judgment are whether any genuine issues of material fact exist for the jury and if not, whether the district court erred in applying the substantive law." *Id.* at 1166–67; *see also* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). In determining whether the grant of summary judgment was appropriate, we must "view the evidence in the light most favorable to the nonmoving party" and refrain from "weigh[ing] the evidence or mak[ing] credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment ("Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate."). To survive summary judgment, "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Under this standard, the district court erred in granting summary judgment to Seaboard.

A.

The parties agree that North Carolina law governs. Accordingly, as a court sitting in diversity, our "function . . . is to ascertain and apply the law of [North Carolina] as it

7

exists," without creating or expanding the state's public policy. *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995).

Lee's state-law tort claims against Seaboard turn on whether Sergeant Phillips's decision to use deadly force was justified under N.C. Gen. Stat. § 15A–401(d)(2), which sets forth the "situations in which a police officer may use deadly force without fear of incurring criminal *or civil* liability." *See State v. Irick*, 231 S.E.2d 833, 846 (N.C. 1977) (emphasis added); *see also Prior v. Pruett*, 550 S.E.2d 166, 172 (N.C. Ct. App. 2001) (applying Section 15A–401(d)(2) in a negligence action challenging law enforcement officers' use of deadly force); *Fowler v. Valencourt*, 423 S.E.2d 785, 790 (N.C. Ct. App. 1992) ("Pursuant to the common law of North Carolina, an assault [and battery] by a law enforcement officer upon a citizen can provide the basis for a civil action for damages against the officer only if a plaintiff can show that the officer used force against [the] plaintiff which was excessive under the given circumstances."), *rev'd in part on other grounds*, 435 S.E.2d 530 (N.C. 1993).

Under Section 15A–401(d)(2), "[a] law-enforcement officer is justified in using deadly physical force upon another person . . . when it is or appears to be reasonably *necessary* . . . [t]o defend himself or a third person from what he reasonably believes to be the *use or imminent use of deadly physical force*." N.C. Gen. Stat. § 15A–401(d)(2)(a) (emphasis added). Additionally, Section 15A–401(d)(2) expressly does not "constitute[] justification for willful, malicious or criminally negligent conduct by any person which injures or endangers any person or property." Therefore, "a law enforcement officer may be subject to liability for recklessness or heedless indifference to the safety and rights of

others when using deadly force." *Hart v. Brienza*, 784 S.E.2d 211, 216 (N.C. Ct. App.) (internal quotation marks omitted), *disc. review denied*, 793 S.E.2d 223 (N.C. 2016); *see also* N.C. Gen. Stat. § 15A–401 (official commentary to subsection (d)) ("[T]he law enforcement officer cannot act with indifference to the safety of others in the use of force. Shooting into a crowded street would be an obvious example of reckless or criminally negligent conduct, and this section would not justify such action.").[3] Accordingly, we must decide whether there is a genuine dispute of material fact as to whether, at the moment Sergeant Phillips shot at Lee's car, Sergeant Phillips reasonably believed (1) that Lee posed an "imminent" danger to the lives of Sergeant Phillips or others; and (2) that deadly force was "necessary" to mitigate that danger.[4]

---

[3] Lee also argues on appeal that Sergeant Phillips's conduct was not privileged under N.C. Gen. Stat. § 15A–401(d)(2) due to the risk of injury his conduct posed to Lee's passengers and others at the scene. Specifically, Lee contends that Sergeant Phillips "shot into Lee's car knowing that there were two passengers in it and that it was 'very possible' that he could hit others, demonstrating reckless disregard and indifference to the safety of others." Appellant's Br. at 29 (quoting J.A. 134, 424). Because we find that the district court erred in granting summary judgment to Seaboard, we decline—without prejudice to Lee—to decide whether Lee, as driver of the car, may rely on any risk posed to others to demonstrate that Sergeant Phillips's actions were not justified under North Carolina law.

[4] In arguing that Sergeant Phillips's decision to use deadly force was reasonable, Seaboard cites several decisions addressing whether a law enforcement officer's use of deadly force complied with the Fourth Amendment of the United States Constitution. But Lee's complaint asserts state-law tort claims, not excessive force claims under the Fourth Amendment. And North Carolina courts have held that "[t]o establish a constitutional violation sufficient to support liability pursuant to [42 U.S.C.] § 1983, . . . [a] plaintiff must establish *an even greater degree of excessive force* than that required for a state law tort action." *Fowler*, 423 S.E.2d at 790 (emphasis added); *Myrick v. Cooley*, 371 S.E.2d 492, 496 (N.C. Ct. App. 1988) ("The threshold for determining whether the limits of privileged force have been exceeded for purposes of liability under (Continued)

Contrary to the district court, we conclude that Lee raised a triable issue of material fact as to whether he posed an imminent danger at the time of the shooting. Regarding whether Lee posed an imminent danger to Sergeant Phillips in particular, Sergeant Phillips testified that he was struck by Lee's car immediately before he shot Lee. By contrast, Officer Twine testified that Sergeant Phillips was facing the side of Lee's car and standing "about three feet" away at the moment Sergeant Phillips fired his weapon. J.A. 212. Bolstering this alternative account, Lee testified that he did not hit Sergeant Phillips and that the car was moving no more than twenty miles per hour as he passed Sergeant Phillips. And one of Lee's passengers testified that Sergeant Phillips was standing "[m]aybe five feet" from the side of the car when Sergeant Phillips shot at the vehicle. J.A. 105. Additionally, whereas Sergeant Phillips testified that he "started falling to [his] right away from the car" at the moment he fired his weapon, J.A. 145, Officer Twine testified that Sergeant Phillips did not fall to the ground until at least thirty seconds after he fired. Based on the testimony that Sergeant Phillips was (1) never hit by Lee's car, which was moving less than twenty miles per hour; (2) five feet away from the car when he fired; and (3) facing the side of the passing car at the time he fired, a reasonable jury could conclude that Sergeant Phillips lacked a reasonable belief that Lee posed an imminent threat to his safety at the time of the shooting. *See Wilcox v. City of*

---

Section 1983 is higher than that for a normal tort action."). Accordingly, even if Sergeant Phillips did not violate the Fourth Amendment, he may be liable to Lee under North Carolina tort law.

*Asheville*, 730 S.E.2d 226, 234 (N.C. Ct. App. 2012) (holding that there was a genuine dispute of material fact regarding whether an officer reasonably believed he was in imminent danger—and, thus, was privileged to use deadly force—when the officer "was positioned off the street, away from the path of the vehicle," which was moving at the "slow speed" of "20 miles per hour," and "continued firing after the vehicle passed him").

The district court also erred in finding that there was no dispute of material fact as to whether "Sergeant Phillips reasonably believed that pedestrians were present in the immediate area and in imminent danger due to Lee's erratic driving." *Lee*, 2016 WL 1249148, at *5. Although Sergeant Phillips testified that he was "concerned that other people were also in the area of the Elks Lodge and then also walking home on Jordan Street," Sergeant Phillips also testified that he was not aware of any specific person in the path of Lee's car at the time he fired his weapon. J.A. 154. Indeed, the only specific people of whom Sergeant Phillips was aware were located by a basketball goal at the end of Jordan Street, "*directly behind* [Lee]" and, therefore, not in imminent danger. J.A. 144 (emphasis added). Additionally, Officer Twine testified that, at the time Sergeant Phillips fired, there were not any pedestrians in front of Lee's car or trying to get out of the way of the car. Sergeant Phillips's admitted lack of awareness as to whether any particular pedestrians were in the car's path, coupled with Officer Twine's testimony that no pedestrians were in front of the car, raise a genuine issue of material fact regarding whether Sergeant Phillips reasonably believed Lee's car posed an imminent danger to bystanders. *See Wilcox*, 730 S.E.2d at 235 (holding that there was material dispute of

fact as to whether an officer reasonably believed bystanders were in imminent danger when the officer "admitted she was unsure where other officers were positioned" at the time she fired).

Finally, the district court erred in concluding that there was no dispute of material fact as to whether Sergeant Phillips's use of deadly force was "necessary" to prevent harm to himself or others. North Carolina courts have found that deadly force is not "necessary" for purposes of Section 15A–401(d)(2) when an officer has a reasonable opportunity to "avoid" the danger or threat allegedly supporting the decision to use deadly force. *See Wilcox*, 730 S.E.2d at 233. In *Wilcox*, for example, the North Carolina Court of Appeals denied summary judgment to an officer who asserted that deadly force was necessary to address a threat presented by an oncoming vehicle, which was approaching the officer at twenty miles per hour, because "[t]here [wa]s a question of fact as to whether [the officer] could have timely moved from his position in front of his car to avoid any potential threat from the slow-approaching vehicle." *Id.*

Here, there is a genuine dispute of material fact regarding whether Sergeant Phillips could have avoided any threat posed by Lee's car by taking cover behind a van parked along the street. *See Lee*, 2016 WL 1249148, at *2. During his deposition, Sergeant Phillips testified that "[t]here was nowhere for [him] to go, . . . a car or anything for [him] to get behind" to get out of Lee's way, J.A. 156, and that "[t]here was no way [he] could have got to the van," J.A. 164. However, Sergeant Phillips also admitted that shell casings from his gun were found "right behind" and "right next to the van," and that he had been "very close to that van when [he] shot" at Lee's vehicle. J.A. 166–67. And

Lee's use-of-force expert testified, based on his reconstruction of the scene, that he believed Sergeant Phillips had "an avenue of escape" by means of "[g]et[ting] behind the van." J.A. 296. Together, the proximity of the shell casings to the van and the expert testimony provide a reasonable basis for a jury to find that Sergeant Phillips could have avoided any danger posed by Lee's vehicle by taking cover behind the van. *See Wilcox*, 730 S.E.2d at 233.[5]

In sum, we conclude that the district court erred in granting summary judgment to Seaboard when there remained genuine disputes of material fact as to (1) whether Lee's car posed an imminent threat to Sergeant Phillips or bystanders; and (2) whether deadly force was necessary to mitigate that threat.[6]

---

[5] Given these genuine disputes of material fact, we also reject Seaboard's argument that Sergeant Phillips's use of force was justified under N.C. Gen. Stat. § 15A–401(d)(2)(b) because he reasonably "could have concluded that [Lee] was attempting to evade arrest by means of a deadly weapon." Appellee's Br. at 19. North Carolina courts have held that a car may be deemed a "deadly weapon" when "'the manner of its use' by [the] defendant clearly put the officers in danger of death or great bodily harm." *See, e.g., State v. Batchelor*, 606 S.E.2d 422, 424 (N.C. Ct. App. 2005) (upholding a conviction of assault with a deadly weapon where the defendant drove at a high rate of speed directly towards an officer and other officers' vehicles, and there was substantial evidence to show that the defendant knew or had reason to know that the officers were law enforcement agents). However, just as factual disputes remain as to whether Sergeant Phillips reasonably believed that Lee posed an imminent danger and that deadly force was necessary to abate that danger, there remains a triable issue of fact regarding "the deadly nature of [Lee]'s use of the car." *See State v. Clark*, 689 S.E.2d 553, 558–59 (N.C. Ct. App. 2009) (internal quotation marks omitted) (reversing a defendant's conviction of assault with a deadly weapon where there was no evidence that the car was moving at a high rate of speed and the officer was not seriously injured by the impact of the defendant's car).

[6] On appeal, Seaboard argues that Lee's claims are barred by the doctrine of public official immunity. Under North Carolina law, however, public official immunity does (Continued)

13

III.

For the reasons stated herein, the judgment of the district court is

*REVERSED AND REMANDED.*

---

not immunize a municipality from liability for torts committed by a municipal employee acting in his official capacity. *Wilcox*, 730 S.E.2d at 230 ("Public official immunity is a derivative form of governmental immunity[] which precludes suits against public officials *in their individual capacities*." (emphasis added) (internal quotation marks and citations omitted)); *see also Lowder v. Payne*, 739 S.E.2d 627, 2013 WL 1121330, at *5 (N.C. Ct. App. 2013) (unpublished table opinion) ("When the trial court applied the public official immunity doctrine to Payne, it absolved him of *individual* liability *only*. However, plaintiff's actions against Payne in his official capacity for ordinary negligence remain intact, thereby providing the foundation necessary to support plaintiff's actions against the City."). Because Seaboard has withdrawn its governmental immunity defense and is being sued for its own conduct and the conduct of Sergeant Phillips in his *official capacity*, Sergeant Phillips's public official immunity is of no consequence. *Compare Thompson v. Town of Dallas*, 543 S.E.2d 901, 905 (N.C. Ct. App. 2001) (holding that an officer's public official immunity did "not extend to protect him from suit in his official capacity for such negligence to the extent his employer, defendant Town, . . . waived immunity by the purchase of liability insurance"), *with Turner v. City of Greenville*, 677 S.E.2d 480, 484–85 (N.C. Ct. App. 2009) (upholding grant of summary judgment in favor of a defendant municipality where there was no proof that the municipality had purchased insurance—and thus waived governmental immunity for official capacity actions—and where the officers alleged to have perpetrated torts were entitled to public official immunity).